14 F.3d 603
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sam Reed SCRUGGS, Defendant-Appellant.
 No. 93-5460.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1993.
 
 Before: KENNEDY, MARTIN, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Sam Reed Scruggs appeals his jury conviction and sentence for conspiracy to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. He raises three evidentiary issues and, in addition, argues that the evidence was insufficient to find him guilty beyond a reasonable doubt. For the reasons stated below, we affirm.
 
 I.
 
 2
 The indictment charged defendant with involvement in an extensive criminal conspiracy responsible for transporting and distributing drugs, primarily cocaine, from Florida and Texas to the Chattanooga, Tennessee area. The evidence against defendant consisted primarily of the testimony of other conspirators who testified as part of their plea agreements. According to their testimony, defendant joined the conspiracy in 1986 when he began to obtain cocaine from Harold Hall, the admitted leader of the conspiracy. Defendant became a courier and later a supplier of cocaine and marijuana for Hall. Defendant used various vehicles to transport the cocaine, a couple of which were purchased by Hall but registered in defendant's name. He made numerous trips from Florida to Chattanooga bringing hundreds of kilos of cocaine. From 1990 to 1991, defendant did not participate in the conspiracy. In early 1992, defendant resumed his dealings with Hall becoming Hall's primary supplier of cocaine and marijuana.
 
 
 3
 At trial, defendant testified on his own behalf. He admitted to prior drug convictions but stated that he had never dealt in or delivered cocaine or marijuana. Joint App. at 126, 129. Defendant admitted to owning several vehicles, which government witnesses stated were used in the conspiracy, but defendant denied any involvement in drug trafficking. Defendant testified that while he knew many of the government witnesses, he had never participated in any illegal drug distribution scheme with any of them.
 
 
 4
 The jury convicted defendant on count two in the indictment, conspiracy to possess with intent to distribute a controlled substance. He was sentenced to 360 months (30 years) to be followed by five years supervised release.
 
 II.
 
 5
 Defendant first argues that the District Court erred by permitting the government to question defendant about whether he had told one Jason Gray, another coconspirator, that he wanted to see if he could figure out how to get Hall out of the Hamilton County Jail, because Hall had once broken him out of jail, and whether he had Gray drive him to the jail. He denied both the statement and that he had been driven to the jail. He admitted, however, that Hall had in fact broken defendant out of jail many years before. Defendant objected to this entire line of questioning before it was presented to the jury on the ground that it was irrelevant because it did not show defendant's involvement in the charged conspiracy but only that defendant had an association with Hall, which defendant had acknowledged, and that defendant wanted to repay Hall for a jail break of long ago. Defendant further argued that testimony of the earlier jail break was unfairly prejudicial because it revealed that defendant had committed a prior crime for which he was incarcerated when he broke out of jail.
 
 
 6
 A trial court's decision to admit or exclude evidence on the basis of relevancy or unfair prejudice will not be reversed on appeal absent a clear abuse of discretion. Zamlen v. City of Cleveland, 906 F.2d 209, 215 (6th Cir.1990), cert. denied, 499 U.S. 936 (1991). We find no clear abuse of discretion here. The trial court found the line of questioning relevant because the jury could infer that defendant would only want to break Hall out of jail if they were partners in crime. We agree. Breaking someone out of jail is a highly risky venture. It is unlikely that defendant would contemplate such a task solely out of friendship or gratitude for a jail break that occurred twenty-two years earlier. It seems reasonable to infer that defendant wanted Hall out of jail because, as partners in crime, Hall could implicate him, which Hall subsequently did. The fact that Hall previously freed defendant from jail corroborates the occurrence of this conversation, to which Gray testified on rebuttal.[1] Thus the challenged testimony concerning the earlier jail break supports the evidence of defendant's desire to free Hall from jail and was therefore relevant to the conspiracy charge.
 
 
 7
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. The fact that defendant was incarcerated on a different charge and broke out of jail certainly creates a risk of prejudice. We note, however, that the testimony of defendant's prior incarceration did not necessarily suggest to the jury that defendant committed any crimes other than those about which the jury already knew. The jury did not hear the charge for which defendant had been incarcerated when he broke out of jail. Defendant had already admitted to prior drug convictions. For all the jury knew, the prior incarceration was for one of the admitted prior drug convictions. Although the testimony of the prior jail break was potentially prejudicial, we conclude that the trial court did not clearly abuse its discretion by allowing it.
 
 III.
 
 8
 Defendant next argues that it was error for the District Court to permit the government to ask defendant's ex-wife whether her present husband had been charged with a drug trafficking offense. Defendant's ex-wife, Mary Scruggs, testified that defendant lived a modest lifestyle and that he had medical complications making driving difficult. She testified that she was married to defendant for approximately twelve years; that in the two or three years since their divorce, she and defendant have remained good friends and have visited each other's home; and that defendant often comes to visit their 13 year-old daughter. On cross-examination, Ms. Scruggs admitted that defendant did drive a car occasionally. She further testified that her current husband, Jerry Parks, and defendant have been good friends for a long time. Over defendant's objection, the court allowed the government to ask Ms. Scruggs whether her current husband had been charged with a drug trafficking offense. She answered in the affirmative. The government's theory of admissibility was that it showed bias on the part of Ms. Scruggs.
 
 
 9
 Ms. Scruggs' relationship to defendant and her husband's relationship to defendant are proper grounds for suggesting bias. Ms. Scruggs has an obvious interest in preventing defendant--her daughter's father, her friend, and her husband's friend--from going to jail. It is less apparent, however, how the charges against her husband suggest that her testimony on behalf of defendant was biased. A significant part of defense strategy was that the evidence against defendant was manufactured by the government. The fact that the witness' husband is under indictment (she did not know if he had yet been convicted of a drug related crime) may tend to show bias against the government.
 
 
 10
 However, even if it is error, the error does not warrant reversal. "[N]o error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such action appears to the court to be inconsistent with substantial justice." McGowan v. Cooper Industries, Inc., 863 F.2d 1266, 1271 (6th Cir.1988) (quoting TCP Industries, Inc. v. Uniroyal, Inc., 661 F.2d 542, 550 (6th Cir.1981)). Although there is some risk of prejudice in that the jury might believe that defendant is a drug dealer because he is friends with Ms. Scruggs' husband, or that the jury might infer that if Ms. Scruggs married this drug dealer, her previous husband, defendant, probably was a dealer also, the defendant had already admitted to being friends with drug dealers, namely, the witnesses against him. To the extent that it did show bias on the part of the witness, it was, of course, admissible.
 
 IV.
 
 11
 Defendant's third challenge is to the admission on rebuttal of a tape-recorded conversation between defendant and government-witness Virgil Bullock. Defendant argues that the tape should have been excluded because it was improper rebuttal and because the government had not provided the tape to defendant before trial.
 
 
 12
 On cross-examination defendant was asked whether he learned prior to his arrest that there was an indictment that had his name on it. He denied knowing of it. He was then asked specifically about the indictment in this case and finally was asked whether he called Virgil Bullock and asked him to send a copy of the indictment that was outstanding. He denied doing so.
 
 
 13
 On rebuttal, the government called Bullock to the stand who testified that defendant had called him and asked about "the indictments." Bullock told defendant that defendant was named in one of the indictments. Defendant allegedly asked Bullock to send him a copy. On cross-examination, Bullock testified that he knew nothing of the cocaine indictment for which defendant was being charged. He only knew of an indictment for a marijuana transaction in which he, defendant and Hall were named. Joint App. at 176-77.
 
 
 14
 The court admitted into evidence, over defendant's objection, tape-recordings of the conversation. On the tapes, Scruggs asks Bullock about an indictment and asks Bullock to send him the one in which defendant was named. The tapes also reveal that defendant knew Hall was in jail, that defendant had called Hall's lawyer, and that defendant was not worried about Hall talking. Defendant also said that after calling Bullock's mobile phone and learning about "problems," defendant "got on the road and [ ] ain't been off of it since." Joint App. at 195.
 
 
 15
 Rule 16 of the Federal Rules of Criminal Procedure provides in part:
 
 
 16
 Documents and Tangible Objects. Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.
 
 
 17
 Fed.R.Crim.P. 16(a)(1)(C). Defendant argues that the trial court erred in admitting the tapes because, defendant claims, the government did not provide the tapes to defendant before trial despite defendant's discovery request for all of his statements.
 
 
 18
 "We review a district court's rulings under Rule 16 only for abuse of discretion." United States v. Phillip, 948 F.2d 241, 250 (6th Cir.1991), cert. denied, 112 S.Ct. 1994 (1992). In this case, defendant concedes that there is an honest dispute as to whether the government informed defendant of the tapes. We note further that the trial court gave defendant until the next day to review the tapes before they were introduced at trial. Under these circumstances, the trial court did not abuse its discretion under Rule 16 in allowing the tapes into evidence.[2]
 
 
 19
 Defendant also argues that the tapes were improper rebuttal evidence because defendant did not deny knowing about any indictment but only about the cocaine indictment. The tapes demonstrate only that defendant knew of the marijuana indictment. Therefore, defendant argues, they do not refute his testimony.
 
 
 20
 A review of the testimony reveals that defendant did in fact deny knowing that "an indictment" had been issued against him. His denial to this question is contradicted by the tapes because they reveal that defendant did know about the marijuana indictment. In addition, the tapes contradict defendant's assertion that he did not know he was a fugitive. Thus the tapes do rebut aspects of defendant's testimony. It should be noted that the testimony during the trial showed that the conspirators dealt in marijuana as well as cocaine.
 
 V.
 
 21
 Finally, defendant argues that the evidence adduced at trial is insufficient to uphold the guilty verdict. Defendant contends that the plea agreements entered into by the government witnesses, pursuant to which the witnesses testified against defendant, made their testimony inherently unreliable. We find no merit in this argument. Numerous witnesses gave detailed testimony of defendant's participation in the cocaine conspiracy. Any doubt raised by the plea agreements as to the witnesses' credibility is for the jury to resolve. It is not unreasonable as a matter of law to credit the testimony of the government witnesses and to find defendant guilty of the crime charged.
 
 VI.
 
 22
 For the reasons stated above, defendant's conviction and sentence are AFFIRMED.
 
 
 
 [1]
 On rebuttal, Jason Gray testified that defendant contacted him shortly after Harold Hall's arrest in August 1992 and that defendant asked him to take him to the jail where Hall was being held. Gray said that he took defendant to the Hamilton County Jail in Chattanooga where defendant looked at the jail and told Gray he could get Hall out. The court disallowed the government from eliciting testimony from Gray about the earlier jail break
 
 
 [2]
 As discussed below, the tapes may have been unfairly prejudicial but not because of the delay in making them available to defendant but rather because of their content